```
14
```
TRUDI G. MANFREDO, Bar No. 166474
DEANNA K. HAZELTON, Bar No. 202821
THE LAW OFFICE OF
TRUDI G. MANFREDO
545 East Alluvial, Suite 112
Fresno, California 93720
Telephone:  (559) 449-9069
Facsimile:  (559) 449-9016

Attorney for James E. Salven
CHAPTER 7 TRUSTEE

**FILED**

OCT 21 2005

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### FRESNO DIVISION

| | |
|---|---|
| In the Matter of | Case No. 04-16835-B-7 |
| SHAHIN DOKHT KAMALI, | Chapter 7 |
| Debtor. | ADV. PROC. 05-1164-B |
| | DC# TGM-2 |
| JAMES E. SALVEN, Chapter 7 Trustee, | |
| Plaintiff, | |
| vs. | |
| NEW LIFE FOR GIRLS, a Pennsylvania Corporation, | |
| Defendant. | DATE: SEPTEMBER 21, 2005<br>TIME: 9:00 a.m.<br>Dept B<br>The Honorable W. Richard Lee |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING
PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION**

A hearing was held on September 21, 2005, on Plaintiff's Motion for Summary Judgment, or in the Alternative, Summary Adjudication. Plaintiff James E. Salven, duly appointed Chapter 7 Trustee ("Plaintiff"), sought summary adjudication as to the First Claim:

49

Federal Fraudulent Transfer ("First Claim"), Third Claim: State Fraudulent Transfer ("Third Claim") of the adversary complaint filed on March 15, 2004. The Motion also sought a determination as to the Third Affirmative Defense: Religious Freedom w/w Restoration Act ("Third Affirmative Defense"), and Fourth Affirmative Defense: California Constitution Free Exercise Clause ("Fourth Affirmative Defense") as they related to the First and Third Claims.

Defendant did not oppose the legal or factual arguments supporting the First and Third Claims, but opposed the motion on the grounds that the Third and Fourth Affirmative Defenses defeated the the First and Third Claims.

The undisputed facts and the law establish that judgment must be entered in favor of the Plaintiff as a matter of law as to the First Claim and summary adjudication is therefore granted as to this claim.

## I. FINDINGS OF FACT

The evidence supporting the motion for summary adjudication is as follows:

On May 10, 2004, Shahin Kamali ("Debtor)" gave a 1998 Toyota Minivan to New Life for Girls ("New Life"). (Separate Statement of Undisputed Material Facts in Support of Plaintiff's Motion for Summary Judgment or in the Alternative Summary Adjudication ("PUMFs"), Statement Nos. 1, 11, 21.) The transfer of the 1998 Toyota Minivan was a gift or charitable contribution made within one year immediately preceding the commencement of the above referenced bankruptcy. (PUMFs, Nos. 3, 13.) Debtor valued the minivan on her Statement of Affairs at $11,000.00. (PUMFs, Nos. 2, 12.) The transfer of the minivan to New Life was an exercise of religion by

2

Debtor. (PUMFs, No. 22.) The Debtor had no intention of filing for bankruptcy at the time Debtor transferred the minivan to New Life. (Defendant's Separate Statement of Disputed and Undisputed Facts in Opposition to Plaintiff's Motion for Summary Judgment, ("DUMFs") Statement No. 27.)

At the time of the transfer, Debtor had two judgments against her in the combined amount of $169,495.22. (PUMFs, Nos. 4, 14.) The judgment liens were recorded on May 7, 2004 and May 17, 2004. Less than three months later, on August 9, 2004, Debtor filed a voluntary petition under Chapter 7 (PUMFs Nos. 5, 15), indicating that she had $10,817.10 in unsecured debts, and $454,908.89 in secured debts, secured by a residence valued at only $240,000.00. (PUMFs, Nos. 6, 7, 16, 17.) The Residence was encumbered by a first deed of trust in the amount of $166,689.00 at the time of filing (PUMFs, Nos. 10 & 20.) The Debtor's combined listed debts are $465,725.99. (PUMFs, Nos. 9, 19.) The Debtor's combined available assets to pay secured and unsecured creditors, less her exemptions, is only $206,726.00. (PUMFs, Nos. 8, 18.)

## II. CONCLUSIONS OF LAW

### A. Legal Standard

This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

Motions for summary judgment or summary adjudication are provided for in Rule 7056 of the Federal Rules of Bankruptcy Procedure ("FRBP"), which incorporates without change Rule 56 of the Federal Rules of Civil Procedure ("FRCP"). Rule 56 provides that if the evidence submitted shows there is no genuine issue as to any material fact and that the moving party is entitled to judgment as

a matter of law, judgment shall be entered in favor of the claimant. FRCP 56(c).

It is the judge's function on a motion for summary judgment not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. In re Schwinn Bicycle Company, 182 B.R. 514 (N.D. Illinois 1995). When the facts controlling the application of a rule of law are undisputed, the application raises a question of law for the court and summary judgment is appropriate. Delbon Radiology v. Turlock Diagnostic Center, 839 F. Supp. 1388, 1391 (E.D. CA 1993).

On a summary judgment motion, the moving party must generally demonstrate there is no triable issue as to the matters alleged in its own pleadings. This requires the moving party to establish beyond controversy every essential element of its claim or defense: "If the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." Fontenot v. Upjohn Co., 780 F.2d 1190, 1194 (5th Cir. 1986).

**B. Plaintiff Has Met its Burden with Regards to its Prima Facie Case as to the First Claim for Relief: Federal Law Fraudulent Transfer.**

A bankruptcy trustee has the power to avoid fraudulent transfers pursuant to state law and/or provisions of the Bankruptcy Code. 11 U.S.C. §§ 544(b), 548; In re United Energy Corp., 944 F.2d 589, 593 (9th Cir. 1991). California's fraudulent conveyance statutes are similar in form and substance to the Bankruptcy Code's fraudulent transfer provisions. In re United Energy Corp. 944 F.2d 589, 594 (9th Cir. 1991). Both allow a transfer to be avoided where

1  "the debtor did not receive a 'reasonably equivalent value' in
2  exchange for the transfer and [the debtor] was either insolvent at
3  the time of the transfer or was engaged in business with
4  unreasonably small capital." Id. Therefore, the Ninth Circuit
5  analyzes the state statutes and the Bankruptcy Code provisions
6  contemporaneously. Id.
7      Four elements must be satisfied to demonstrate a fraudulent
8  transfer: (1) the transfer must have involved property of the
9  debtor; (2) the transfer must have been made within one year (four
10 years under the California Fraudulent Transfer Act) of the filing of
11 the petition; (3) the debtor must not have received reasonably
12 equivalent value in exchange for the property transferred; and (4)
13 the debtor must have been insolvent, been made insolvent by the
14 transaction, be operating or about to operate without property
15 constituting reasonable sufficient capital, or be unable to pay
16 debts as they become due. 11 U.S.C. § 548(a)(1); In re United
17 Energy Corp., 944 F.2d 589, 594.
18     The undisputed facts in this case are that the Debtor listed,
19 under penalty of perjury, in her Statement of Affairs, Statement No.
20 7 that she gifted property on May 10, 2004, to Defendant, New Life,
21 namely a 1998 Toyota Minivan valued at $11,000.00. Statement No. 7
22 is reserved for gifts and charitable contributions.
23     At the time of the transfer, Debtor had two judgments against
24 her in the combined amount of $169,495.22. The judgment liens were
25 recorded on May 7, 2004 and May 17, 2004. Less than 90 days later,
26 on August 9, 2004, Debtor filed a voluntary petition under Chapter
27 7, indicating that she had $10,817.10 in unsecured debts, and
28 $454,908.89 in secured debts, secured by a residence valued at only

$240,000.00. The Residence had a first deed of trust in the amount of $166,689.00 at the time of filing. The Debtors' combined debts were $465,725.99. The Debtor's combined available assets to pay secured and unsecured creditors, less her exemptions was only $206,726.00.

To determine what is "property" of the Debtor at the time of the transfer, the Bankruptcy Code looks to underlying state law, which in this case defines "property" as "anything that may be the subject of ownership." Ca. Civ. Code 3439.01(h); See Hartvig v. Tri-City Baptist Temple, Inc. (*In re Gomes*), 219 B.R. 286, 292 (Dist. Or, 1998); Nobelman v. American Savings Bank, 508 U.S. 324, 329, 113 S. Ct. 2106, 2110, 124 L. Ed. 2d 228 (1993), Butner v. United States, 440 U.S. 48, 55, 99 S. Ct. 914, 918, 59 L. Ed. 2d 136 (1979)("Property interests are created and defined by state law.")

Additionally, courts have held that a charitable contribution, by definition, demonstrates that a Debtor received no reasonably equivalent value for the transferred asset. DeJong v. Commissioner, 36 T.C. 896, 899 (1961), aff'd, 309 F.2d 373 (9th Cir. 1962)(emphasis added)[a charitable contribution is a gift or "voluntary transfer of property by *the owner* to another without consideration therefor."]

Lastly, courts generally rely upon the Bankruptcy Code's definition of insolvency for the purposes of §548(a)(1)(B). See Tavenner v. Smoot, 257 F.3d 401, 409, fn 2 (4th Cir. 2001); In re Porter, 37 B.R. 56, 61 (E.D. Va. 1984); In re Worcester, 28 B.R. 910, 915, fn 6 (C.D. Ca 1983). Section 101(32) of the Bankruptcy Code provides that, for an individual, insolvent means:

/////

> [A] financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of –
>
>> (i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and
>>
>> (ii) property that may be exempted from property of the estate under section 522 of this title. 11 U.S.C. § 101(32) (1994).

Neither the above mentioned facts or law are in dispute and the court finds that the property was property of the Debtor prior to May 10, 2004, that the transfer was made within the voidable time period, that the Debtor did not receive reasonably equivalent value for the transfer, and that the Debtor was insolvent at the time of the transfer.

As such, the Plaintiff has met its burden with regards to his prima facie case as to the First and Third Claims. Accordingly, the court now turns to the affirmative defenses, to determine whether they defeat the First and Third Claims.

### C. Defendant's Affirmative Defenses

The following legal issues are in dispute, (1) the application of the Religious Freedom Restoration Act ("RFRA") after the enactment of the Religious Liberty and Charitable Donation Protection Act ("Liberty Act"); (2) whether avoiding the subject transfer would be a "substantial burden" on Debtor's religious beliefs and practices; and (3) whether RFRA Applies to the Third Claim: State Law Fraudulent Transfer.

/////
/////
/////
/////

### D. Legal Analysis

#### 1. The Application of RFRA to the Post-Liberty Act, 11 U.S.C. § 548.

Defendant, New Life, asserts an affirmative defense that the Trustee's avoidance and recovery of the transfer would violate the rights of the Debtor. RFRA, 42 U.S.C. §§2000bb, et seq.

As applied to federal laws, RFRA sets forth a three-part test to govern whether a particular law permissibly restricts a religious devotee's free-exercise rights. See 42 U.S.C. § 2000bb-1; (See generally, City of Boerne v. Flores, 117 S.Ct. 2157, 2160 (1997) and Sutton v. Providence St. Joseph Medical Center, 192 F.3d 826, 831 (9th Cir. 1999) as to the applicability of RFRA to federal laws only.) If a law amounts to a "substantial burden" on a person's free exercise of his religion, he need not comply with it unless the law is justified by a "compelling governmental interest" and is the "least restrictive means" of furthering that interest. Id.;

As a threshold matter, unless enforcement of the concerned statute imposes a "substantial burden" on the religious practices or beliefs of the Debtor or the Defendant, the court need not decide whether or not there is a compelling governmental interest. Hartvig v. Tri-City Baptist Temple, Inc., (In re Gomes), 219 B.R. 286, 294 (Dist. Or, 1998).

The religious adherent has the burden of proving the existence of a substantial interference with the right of free exercise. Werner v. McCotter, 49 F.3d 1476, 1480 n.2 (10th Cir. 1995). Once this threshold showing has been made, the burden shifts to the government to show that the challenged regulation furthers a

/ / / / /

compelling governmental interest in the least restrictive manner. 42 U.S.C. 2000bb-1(b); <u>In re Bloch</u>, 207 B.R. 944 (Bankr D. Colo. 1997).

Prior to the enactment of the Liberty Act in 1998, numerous courts were requested to apply the RFRA test to 11 U.S.C. § 548 in cases where the trustee was attempting to set aside tithes by debtors to their churches within a year of filing for bankruptcy. There was a split in those court rulings as to whether section 548 substantially burdens a Debtor's religious practices by allowing the Trustee to seek recovery of tithes to churches. <u>In re Gomes</u>, 219 B.R. 286 (Bankr. Or 1998) [finding section 548 does not substantially burden a Debtor's religious practices by allowing Trustee to recover tithes to a church); <u>In re Hodge</u>, 200 B.R. 884 (D. Idaho 1996)[finding section 548 does substantially burden a Debtor's religious practices by allowing Trustee to recover tithes to a church.]

In response to the tithing cases, Congress attempted to resolve the dispute between the courts and split the baby, so to speak, when it enacted the Religious Liberty and Charitable Donation Protection Act of 1998 ("Liberty Act"), Pub. L. No.105-183, 112 Stat. 517 (codified as amended in scattered sections of 11 U.S.C.; i.e. §544(b)(2) and 548(a)(2)).

The Liberty Act severely restricts the ability of a bankruptcy trustee to avoid pre-petition transfers by debtors to charitable institutions, including, but not limited to, religious entities through certain amendments to §544 and §548 of the bankruptcy Code. <u>In re Witt</u>, 231 B.R. 92, 96-97 (Bankr. N.D. Ok. 1999). Under the terms of the Liberty Act, a bankruptcy trustee may not avoid a transfer by a debtor to a charitable institution if the transfer

does not exceed fifteen per cent (15%) of the debtor's gross annual income in the year the contribution was made. 11 U.S.C. §548(a)(2). A contribution which exceeds fifteen percent (15%) of the debtor's gross annual income in the year of the contribution was made may not be avoided if it was consistent with debtor's prior charitable contribution practices. Id.

The Liberty Act only insulates transfers of a "financial instrument" as defined in section 731(c)(2)(3) of the Internal Revenue Code of 1986 or "cash." 11 U.S.C. §548(d)(3)(B). Section 731(c)(2)(C) of the Internal Revenue Code states "The term 'financial instrument' includes stocks and other equity interests, evidences of indebtedness, options, forward or futures contracts, notional principal contracts, and derivatives." Based on this explicit language, Collier On Bankruptcy 548-552.6, ¶548.05[6][b] states that the donee of a **car or real estate** would not get the benefit of the new legislation. (Emphasis added.)

The legislative history behind the Liberty Act indicates that the purpose of the Liberty Act was to reduce a bankruptcy trustee's ability to attempt to recover charitable donations from a church under the constructive fraudulent transfer provisions of the Bankruptcy Code. See In re McLeroy, 250 B.R. 872, 881-882 (Bankr. N.D. Texas 2000) citing 144 CONG. REC. H3999-02 (June 3, 1998)(statement of Rep. Gekas); citing 144 CONG. REC. S4769-01 (May 13 1998) (statement of Sen. Grassley) ["churches and charities around the country are experiencing a spate of lawsuits by bankruptcy trustees trying to undo tithes or charitable contributions..."]; citing 143 Cong. Rec E2037-01 (Oct. 21 1997) (statement of Rep. Packard) [the passage of the Liberty Act would

insure that "donations received in good faith from individuals will not be taken from [churches' and charities'] pockets by creditors"]; see also 2005 Collier Pamphlet Edition, Part 1, Bankruptcy Code, p. 573, Overview of Section 548 and p. 574, Comment on Amendments.

Defendant requests that this Court apply the RFRA standard to 11 U.S.C. §548 despite Congress' recent application of RFRA to section 548 through the Liberty Act. The court, however, cannot extend limits set by the legislature and this Court finds that legislature clearly set forth in section 548 what Congress found to be a "substantial burden" on a debtor's religious freedom.

Congress, with RFRA in mind, was very specific in the Liberty Act as to what transfers the trustee could and could not set aside when it came to religious or charitable entities. In essence, Congress carved out those transfers it intended to protect under RFRA, while leaving certain religious transfers free for the trustee to recover. If this Court is to give any meaning to the Liberty Act or RFRA, it cannot subsequently find that those transfers left untouched by Congress in the Liberty Act were previously intended by Congress to be a violation of RFRA.

As such, this court concludes [~~finds~~] that RFRA is not applicable in this case in that Congress has already addressed RFRA with the Liberty Act as it relates to section 548.

### 2. The Subject Transfer is Not a Substantial Burden on this Debtor's Religious Beliefs or Practices.

Even if Courts must apply the RFRA standards to the post-Liberty Act section 548, this Court concludes [~~finds~~] that the Defendant has not demonstrated that this one-time gift of a minivan to the Defendant

/ / / / /

placed a substantial burden on the Debtor's religious beliefs or practices.

The Defendant relies on the tithing cases to demonstrate a substantial burden in this case. This case, however, is distinguishable from the tithing cases in that tithing is a continuous act of giving monetary contributions to a religious entity as required by certain religious beliefs. The avoidance of a debtor's tithe deters the debtor from continuing the religious practice. An individual would have no way of following the religious practice of tithing without the fear of the tithe being avoided in the event of bankruptcy. The impact of setting aside the transfer could have a chilling affect on pre-, as well as, post-petition routine tithing practices.

On the other hand, the donation in this case was a one time gift from a Debtor who stated in her declaration that she did not know that she was filing for bankruptcy at the time of the transfer. No evidence is presented to support that any religious practice is being burdened here. There is no evidence which would indicate that this Debtor routinely gives vehicles to religious entities as part of her religious belief. Debtor simply claims that she would not have transferred the vehicle had she known it would be set aside, *but the possibility of bankruptcy was not a factor in that decision. wm.* However, there is no indication that stopping her transfer of this vehicle, albeit retroactively, would have caused a substantial burden on her religious belief or practice.

The Defendant argues that this Debtor's religious belief is to give routinely to the poor or to religious charities. Despite the lack of evidence demonstrating such a practice on this Debtor's part, deterring this Debtor from giving a vehicle, does not deter

12

the Debtor from her activity of giving to religious charities. She was and is still free to give cash and other financial instruments on a regular basis. Debtor may even give more than 15% of her gross annual income if she establishes a practice of doing so. This would be a completely different case, if the Debtor had given cash or a financial instrument, as opposed to a vehicle.

This court finds that the Defendant did not demonstrate that the setting aside of a one-time gift of a minivan to a religious entity was a substantial burden to this Debtor's religious beliefs or practices and Defendant therefore, fails to meet its burden.

### 3. Third Claim for Relief: State Law Fraudulent Transfer.

In that this Court finds that Plaintiff prevails on its First Claim, it does not address the Third Affirmative Defense and how it may or may not affect the Third Claim for Relief: State Law Fraudulent Transfer.

## III. CONCLUSION

Plaintiff has demonstrated that no material facts are in dispute and has established beyond controversy every essential element of the First Claim which warrants judgment in his favor. For the foregoing reasons, the court will grant the motion for summary adjudication as to the First Claim in Plaintiff's favor.

Plaintiff has sought the turnover of the vehicle or its value. However, the value of the vehicle remains in dispute. This Court provides Defendant with the option of turning over the 1998 Toyota Minivan to the Trustee or paying the value thereof. If the Defendant chooses to pay for the minivan and a value cannot be

/////

agreed upon by the parties, a hearing as to the value of the 1998 Toyota Minivan will be set at a later date.

Dated: October __21__, 2005

_____
W. Richard Lee, Judge
United States Bankruptcy Court

Presented By:

The Law Office of Trudi G. Manfredo

By _____
Deanna K. Hazelton
Attorney for Plaintiff

As To Form
Approved By:

_____
Peter Fear,
Attorney for Defendant

14